(Reap. Dec. 10691)

MINE SAFETY APPLIANCES COMPANY *v.* UNITED STATES

Entry No. 1322, etc.

(Decided March 10, 1964)

*Jerome G. Clifford* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Samuel D. Spector*, trial attorneys), for the defendant.

LAWRENCE, Judge: Five appeals for a reappraisement enumerated in the schedule attached to and made part of this decision were consolidated at the request of plaintiff for the purposes of trial and decision. Involved in said appeals is the proper statutory basis of value and the amount thereof for certain parts of mine safety lamps, exported from Scotland.

Upon importation into the United States, the merchandise was appraised on the basis of foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended. It is the contention of plaintiff herein that the correct dutiable value for such or similar merchandise is the cost of production, as defined in section 402(f) of said act (19 U.S.C. § 1402(f)).

Set forth below for ready reference are the competing provisions of the statute:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal

to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Robert E. Havener was called to testify on behalf of plaintiff. He has been associated with the plaintiff company for the past 15 years. He is an electrical engineer on mine safety lamps and is presently the product line manager. He is familiar with the various parts of the mine safety lamps in issue and, during the period of their importation, he was in charge of sales. The merchandise was sold in the United States to coal and metal mining companies and to Thomas A. Edison, who used the various articles in the manufacture of mine safety lamps, the purpose of which was, when affixed to miners' caps, to provide a light source underground. Havener testified that none of the merchandise before the court was offered for sale or sold for resale in the United States. The witness also stated that there are no other mine lamps or parts thereof imported from Scotland into the United States and offered for sale or sold in the United States.

Received in evidence as plaintiff's exhibit 1 was an affidavit of Richard Crawford, managing director of Mine Safety Appliances Company, Ltd. (hereinafter referred to as MSAC, LTD.). Crawford has been associated with MSAC, LTD., in various executive and other capacities for more than 11 years. He stated that, since incorporation, it has been the practice of MSAC, LTD., to offer for sale and to sell mine safety lamps and parts thereof either directly or through agents or representatives acting on behalf of MSAC, LTD., for home consumption in Scotland to those purchasers only who purchase these products for their own use and consumption and not for resale to others and to offer them for sale and to sell for exportation to the United States to the plaintiff company (hereinafter referred to as MSAC, USA) exclusively. In his affidavit, Crawford further stated it has been the long-established practice in the trade of MSAC, USA, to offer for sale and to sell mine safety lamps and parts thereof of MSAC, LTD., manufacture to those purchasers only who bought them for their own use and consumption and not for resale to others. Crawford also stated that mine safety lamps and parts thereof of other than MSAC, LTD., manufacture, produced outside of Scotland, were offered for sale and sold for home consumption in Scotland only and not for exportation to the United States and that such sales and offers for sale were limited to purchasers who bought for their own use and consumption. No commercially produced mine safety lamps or parts thereof of any kind, description, or manufacture were, at the times of the importations of the instant merchandise,

offered for sale or sold for home consumption in Scotland to purchasers, such as retailers, dealers, or wholesalers, who purchased said products for the purpose of reselling them to others.

The affidavit of Richard Crawford also contained the various elements of cost of production of the mine safety lamp parts applicable at the periods of the importations before the court. Said figures will be set forth, *infra*.

On behalf of defendant, there was received in evidence exhibit A, consisting of a letter, dated February 6, 1956, from MSAC, LTD., to MSAC, USA, to which is attached a four-page pricelist applicable to "MODEL 'L' LAMP AND ACCESSORIES."

In support of the appraised value, defendant relies on the statement in said exhibit A, which reads as follows:

Since in this country our main customer is the National Coal Board and since we have always maintained a policy of selling direct to this customer, we do not normally have discounts on our sales of Edison Lamps and Parts in the United Kingdom. The prices, as per the enclosed price list are therefore those which we charge to the National Coal Board, although in various small instances, mainly bulbs and cables, we do sell to the National Coal Board at a special price which is controlled by the manufacturer. A considerable quantity of our sales of Edison Lamps and Parts, other than to the National Coal Board, are however accomplished through agents, and in these cases we do allow a commission of 15% from our normal list price.

In a reappraisement proceeding, it falls to the plaintiff not only to overcome the statutory presumption attaching to the action of the appraiser, but also to establish some other dutiable value as the proper one. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495.

From the oral and documentary evidence offered in the instant case on behalf of plaintiff, it has been shown that mine safety lamps and parts thereof, such as or similar to those in issue, were offered for sale and sold for home consumption in Scotland only to purchasers who bought them for their own use and consumption and that it was the industrywide policy in Scotland to limit offers for sale and sales of such or similar articles to that one category of buyers. The evidence also discloses that a like limitation existed on free offers for sale and sales of such or similar mine safety lamps and parts thereof for domestic consumption in the United States. Such a limitation constitutes a restriction on the free use and dominion over the merchandise and deprives it of appraisement on the basis of statutory foreign or United States value. In *United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262, the court stated in part—

* * * a foreign market is controlled when restrictions are imposed on the resale, free use, dominion over the merchandise, or *confining of sales to selected purchasers*. [Italics added.]

It is the opinion of the court that exhibit A, consisting of a letter from MSAC, LTD., to MSAC, USA, to which is attached a "published price list," offered on behalf of the defendant in support of the existence of a statutory foreign value, possesses little relevance to the merchandise in issue. It is noted that the letter is dated February 6, 1956. The importations before the court, consisting of five in number, were shipped from Scotland on August 25, 1955, June 14, 1956, December 7, 1956, April 18, 1957, and January 22, 1958. There is nothing in the record to indicate that the market remained stable during that extended period of time.

It appears from the record herein that offers for sale and sales of such merchandise for exportation to the United States were restricted to MSAC, USA, exclusively and, further, that no similar merchandise was offered for sale or sold for exportation to the United States. It follows, therefore, that there did not exist a statutory export value.

The court comes to the conclusion that cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930, is the proper statutory basis of valuation for the merchandise in issue. The affidavit of Richard Crawford, received in evidence as plaintiff's exhibit 1, sets forth in detail the costs of production of the instant merchandise, which figures stand unrefuted.

On the record before it, the court finds as facts:

1. The merchandise consists of parts of mine safety lamps manufactured in Scotland and exported therefrom in five shipments at various times between August 25, 1955, and January 22, 1958.

2. The merchandise was appraised on the basis of foreign value, as the value is defined in section 402(c) of the Tariff Act of 1930, as amended.

3. Such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Scotland either for home consumption in Scotland or for exportation to the United States.

4. Such or similar merchandise was not freely offered for sale to all purchasers in the United States for domestic consumption.

5. The various costs of material of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise, at a time preceding the dates of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business; as well as the usual general expenses in the case of such or similar merchandise; as well as the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; as well as the addi-

tion for profit equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by MSAC, LTD., in the production or manufacture of merchandise of the same class or kind; are as follows:

Shillings per 100 pieces

| Part No. | (1) Cost of materials, etc. | (2) General expenses | (3) Containers, coverings, etc. | (4) Profit | Total cost of production |
|---|---|---|---|---|---|
| Appeal No. R58/7581 | | | | | |
| P323–1 | 308. 040 | 30. 804 | 6. 120 | 27. 107 | 372. 071 |
| Appeal No. 285900–A | | | | | |
| F2–430 | 3. 400 | . 340 | . 585 | . 299 | 4. 624 |
| F2–361 | 6. 620 | . 662 | . 610 | . 509 | 8. 401 |
| P391–C1 | 821. 740 | 82. 174 | 32. 370 | 72. 312 | 1008. 596 |
| F2R1 | 166. 460 | 16. 646 | 3. 240 | 14. 648 | 200. 994 |
| Appeal No. 285896–A | | | | | |
| 3BP (headpiece less bulb and side cable entry with reflectors and thick plain lenses) | 1027. 300 | 102. 730 | 12. 871 | 90. 402 | 1233. 303 |
| Appeal No. 285907–A | | | | | |
| P9–1 | 24. 840 | 2. 484 | . 610 | 2. 185 | 30. 119 |
| 50B | 106. 740 | 10. 674 | 4. 180 | 9. 393 | 130. 987 |
| P391C–1B} P391C–1 } | 901. 200 | 90. 120 | 32. 370 | 79. 305 | 1102. 995 |
| Appeal No. 290744–A | | | | | |
| F2R1 | 175. 100 | 17. 510 | 3. 240 | 15. 408 | 211. 258 |
| 3–BP | 1267. 400 | 126. 740 | 12. 071 | 103. 531 | 1509. 742 |

The court, therefore, concludes as matters of law:

1. That cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930, is the proper basis for appraisement of the items of merchandise in issue.

2. Said costs of production for the merchandise in issue are as set forth in finding of fact numbered 5, *supra*.

Judgment will issue accordingly.